E-FILED
Tuesday, 24 January, 2006  12:49:25 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| CATERPILLAR INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>ENTEC ENGINE CORPORATION,<br>a corporation; and )<br>CLYDE C. BRYANT, an individual, )<br><br>Defendants. ) | Civil Action File No.<br>1:05-cvp01394-MMM-JAG |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

Defendants Entec Engine Corporation ("Entec") and Clyde C. Bryant ("Bryant") pursuant to

Rule 12(b)(1) oBaf the Federal Rules of Civil Procedure and the Court's discretionary authority

under the Declaratory Judgment Act, 28 U.S.C. §2201, submit this Memorandum in support of their

Motion to Dismiss this declaratory judgment action brought by Plaintiff, Caterpillar Inc.

("Caterpillar").

## I.    PRELIMINARY STATEMENT

This suit, for a declaratory judgment of non-infringement of patents[1] and non-

misappropriation of trade secrets, is an anticipatory filing to force a small company and individual

inventor to litigate far from home at great expense.  Caterpillar falls far short of meeting its burden

to show the required objective reasonable apprehension of suit, as shown by its citations to 2-5 year

old correspondence out of context, when an objective examination of that correspondence

demonstrates continuing efforts by Entec to propose licensing discussions rather than threaten suit.

---

[1] Caterpillar alleges that it does not infringe Entec's U.S. Patent 6,279,550 (the '550 patent) issued on August 28, 2001, or Entec's U.S. Patent 6,951,211 (the '211 patent) issued on October 4, 2005.

1

Caterpillar further cites termination of licensing discussions for support of its apprehension, without informing the Court that Caterpillar's unilateral termination of those discussions did not occur until 15 minutes after it filed suit or that Caterpillar had agreed that the licensing discussions could not be used for or in a suit.

Caterpillar's objective is apparently to preemptively strike in order to secure a preferred litigation forum and to cause Entec and Bryant to incur substantial litigation fees litigating at great distance, both without any objectively reasonable basis for concluding that Entec or Bryant intended to file an action based on the '550 or '211 patents or for misappropriation of trade secrets.

Caterpillar relies upon selective citations to stale and unattached documents and misleading descriptions of events, meetings, and its unilateral termination of licensing negotiations (on the day it filed suit) to manufacture the impression of an active and actual controversy where there was none. When the actual exhibits referred to by Caterpillar but not attached to the Complaint are reviewed, they demonstrate Entec's efforts to license technology – not a contentious series of threats of legal action. Similarly, the documents relating to the recent licensing negotiations, which were initiated and terminated by Caterpillar, have three significant attributes: (1) cordiality; (2) focus on royalty amounts; and (3) exclusion of the meetings and communications from constituting a basis for litigation.

Finally, in order to demonstrate that the positions of Entec and Bryant are genuine, both parties have executed the Covenant Not to Sue, attached to the Motion to Dismiss as Exhibit A. This Covenant precludes Caterpillar's apprehension of a controversy, which never existed in the first place, from later arising.

Accordingly, this action should be dismissed on each of the following grounds: (1) the Court lacks subject matter jurisdiction over the action because there was no actual controversy

between the parties as to any of the patents-in-suit or as to a misappropriation of trade secrets at the time of filing the Complaint; and (2) Caterpillar's lawsuit is an improper anticipatory filing.

## II.    STATEMENT OF THE CASE

Entec is a Georgia corporation headquartered in Alpharetta, Georgia. Entec is the exclusive licensee of the '550 and '211 patents on engine technology. Bryant is the inventor and patent holder of this technology.

### Initial Contact

Caterpillar alleges that Entec contacted Caterpillar in 1999 and requested a meeting in order to show Entec's emissions-reducing engine technology to Caterpillar. Complaint for Declaratory Relief, paragraph 16 (hereinafter referred to as the "Comp., ¶ __").

On December 16, 1999, Entec's Chief Financial Officer executed the Nondisclosure Agreement attached to the Motion as **Exhibit B**. (Exhibits to the Motion are hereinafter referred to as "Ex. __") Comp., ¶ 17. Thereafter, on January 20, 2000, the parties met at Caterpillar's facilities in Peoria, Illinois. Comp., ¶ 18. At that time Entec shared with Caterpillar, among other things its published patent application, including the specification contained therein.

### Communications Between the Parties During 2000-2004

On April 20, 2000, Mr. Isaf, counsel for Entec, wrote Mr. Chanda of Caterpillar promoting the advantages of the Entec technology. Mr. Isaf concluded the letter with two paragraphs seeking to further excite Caterpillar's interest in licensing Entec's technology. **Ex. C**, page 2. He did also mention in the letter Caterpillar's verbal agreement to sign a non-disclosure agreement for Entec and commented that Caterpillar "should, of course, not use any of Entec's technology or know-how, nor should [Caterpillar] disclose it in any way to others without written agreement from Entec." **Ex. C**, page 1. See also, Comp., ¶ 21.

3

On May 4, 2000, Mr. Hampsch, Intellectual Property Counsel for Caterpillar, advised that Caterpillar was "not interested in pursuing a relationship with Entec Engine Corporation at this time." He went on to give assurances "that any confidential information disclosed will remain in confidence as is our standard professional practice." **Ex. D**; Comp., ¶ 22.

The next piece of correspondence on which Caterpillar relies to establish its objectively reasonable apprehension of suit occurred over three years later (yet still over two and one-half years ago), on June 16, 2003. **Ex. E**. In paragraph 23 of its Complaint, Caterpillar states that "Entec accused Caterpillar of infringing Entec's ['550 patent] with engines using Caterpillar's Advanced Combustion Emissions Reductions Technology." Actual review of the communication from Mr. Bird, Entec's corporate counsel, shows that he attached news articles that he observed indicated that Caterpillar was "apparently now using Entec's patented technology." **Ex. E**, at p. 2. He explained in detail how it appeared that Caterpillar was using that technology and asked "whether Caterpillar wishes to enter good faith discussions about a mutually acceptable license of Entec's technology." **Ex. E**, at p. 3. Although the letter referenced Caterpillar's failure to follow through on execution of a confidentiality agreement as promised and Caterpillar's confidentiality obligations, it made no accusations of breach of confidence by Caterpillar. In fact, despite the evidence to which Mr. Bird referenced, he unequivocally declared: "We must and will, until it is learned otherwise, trust that your statements have been in good faith and have not been made to establish or continue any 'cover up'." **Ex. E**, page 2.

Any implication that Mr. Bird's letter of June 16, 2003, placed Caterpillar in immediate apprehension of an impending suit is overcome by the delay in Caterpillar's response until August 1, 2003, as well as its delay in filing suit for 2 1/3 more years and its continuing discussions with Entec in the meantime. **Ex. F**. In that response, Mr. Roberson, Caterpillar's Senior Intellectual

Property Attorney, gave Entec assurances that he had investigated Entec's concerns and "determined that Caterpillar has not violated any IP right of Entec or failed to abide by any actual or implied obligation to Entec." **Ex. F**, page 1.  Mr. Roberson concluded his letter with a laundry list of documentation that he would require in order to investigate the matter further and stated that "Unless I receive such a response from Entec in a timely manner, I shall consider this matter closed."  The only conclusion that could be derived from Mr. Roberson's conclusion was that he considered his response to be thorough and conclusive and that he not only considered the matter closed but anticipated no further communications from Entec on the matter.

Mr. Bird wrote back to Mr. Robersen almost three months later on October 29, 2003. Comp., ¶ 25.  Mr. Bird explained that "the purpose of our current letter is to make of record that Entec does not concede nor acquiesce to the statements and conclusions expressed in your letter." **Ex. G**, page 1.  Mr. Bird went on to explain that Entec was merely reserving its rights and not making accusations:

> In spite of the assertions and denials of either party, the facts will eventually become clear.  At this stage, Entec states its lack of concession and acquiescence in the statements and positions of your letter, and reserves to itself the right to continue investigation and analysis as facts become more available and reserves to itself the right to continue or to restate its positions at some future date.  We must and will, until it is learned otherwise, trust that your statements have been in good faith and have not been made to establish any "cover up".

**Ex. G**, page 2.  This language is hardly accusatory and certainly does not incite apprehension of impending litigation.  Mr. Bird concluded his letter demonstrating that Entec's communications were aimed at licensing its technology to Caterpillar:  "We write to continue good faith discussions and to offer again a license to Caterpillar for the ENTEC technology on mutually acceptable terms." **Ex. G**, page 2.

Again showing a complete lack of concern that Entec might be contemplating litigation, Caterpillar waited almost three months before responding on January 27, 2004.  Comp., ¶ 26; **Ex. H**.  Mr. Roberson provided limited information on the Caterpillar technology, including a copy of a patent application published on November 20, 2003.  **Ex. H**, page 1.  He again confirmed that Caterpillar had investigated Mr. Bird's statements "and confirmed that it has not violated any intellectual property rights of ENTEC or failed to abide by any actual or implied obligation to ENTEC."  Mr. Roberson concluded his letter by stating:  "I consider this issue closed unless I receive additional information from you in a timely manner."  **Ex. H**, page 2.

Over four months later, on May 31, 2004, Mr. Bird responded "primarily to belie any erroneous assumption that Entec might acquiesce in the positions of Caterpillar expressed" in its earlier communications.  **Ex. I**, page 1.  Mr. Bird declined Caterpillar's invitation to provide specifics such as a claim chart showing how the Entec '550 patent applied to Caterpillar's technology.  Id.  He specifically acknowledged that "Caterpillar's attorneys are far better positioned to know the full extent of the Caterpillar technology."  *Id.*  Mr. Bird closed his letter by continuing his early attempts  to kindle an interest in Caterpillar in licensing the Entec technology.  *Id.  See* Comp., ¶ 28.

On September 23, 2004, Mr. Isaf, counsel for Entec, wrote Caterpillar to inform Caterpillar as a courtesy that Entec had filed Requests for Reexamination for two Caterpillar patents.  See Comp., ¶¶ 30-32; **Ex. J**.  In paragraph 32 of its Complaint, Caterpillar states:

> Caterpillar reasonably understood [Entec's statement that it understood Caterpillar's position was that its '618 and '280 patents "accurately describe the methods and apparatus used by Caterpillar"] as Entec's assertion that its filing of the requests for reexamination initiated more than just a battle over Caterpillar's patent rights, but rather was an attempt by Entec to demonstrate that it owned patent rights to Caterpillar's technology.

While Caterpillar apparently concedes that the initiation of Reexaminations is not a fact on which a declaratory action can be based, Caterpillar fails to mention in its Complaint that Entec efforts were directed toward licensing, not litigation.  Mr. Isaf concluded his short courtesy letter with the following two paragraphs:

> Once again, Entec invites Caterpillar to sit down in good faith and with earnest to negotiate a license from Entec.  Understandably, Entec will be more inclined to grant better licensing terms in the near term than in the distant future. I welcome your call to begin a licensing dialog.

Caterpillar's failure to take legal action, or even to ask for clarification, shows it did not understand Entec's letter at the time as a claim of infringement.

This was the last communication between Caterpillar and Entec on which Caterpillar relied for its assertion that Caterpillar reasonably apprehended an impending lawsuit.  Its wording evidences the contrary – Entec's patient and persistent efforts to avoid conflict and license its technology.  Caterpillar failed to reference its letter dated October 13, 2004, in which Caterpillar responded to Mr. Isaf's letter and asked Entec to let Caterpillar "know the patent number(s), know-how or other licensing opportunities that are available to Caterpillar.  Additionally, any other details relating to Entec's proposed license would also be helpful."  **Ex. K**.

Entec further responded to that letter by telephone from its counsel, Lou Isaf, as further shown by Mr. Woods letter of November 3, 2004, to Mr. Isaf in which he stated that Caterpillar "is not currently interested in obtaining a license in" Entec's pending patent applications.  **Ex. L**.  He asked that Entec contact Caterpillar should Entec have "issued patent(s), which Entec believes may be of interest to Caterpillar."  *Id*.

Thus, prior to the actual discussions about licensing that took place on December 1 and December 14, 2005, the documented communications reflect Entec's concentration on licensing and the complete absence of any threats of litigation whatsoever.

The most recent document on which Caterpillar bases its assertion of a reasonable apprehension of an impending lawsuit on infringement is Mr. Isaf's courtesy letter of September 23, 2004, informing Caterpillar of actions in the USPTO (which cannot be the basis for a declaratory judgment) and inviting Caterpillar to sit down in good faith to negotiate a license. **Ex. J**. The most recent document on which Caterpillar bases its assertion of a reasonable apprehension of an impending lawsuit on misappropriation of trade secrets is the letter of October 29, 2003 (**Ex. G** - over two years before suit was filed) in which confidentiality was discussed and Entec stated "We must and will, until it is learned otherwise, trust that your statements have been made in good faith and have not been made to establish or continue any 'cover up'." Thereafter, Caterpillar responded on January 27, 2004 (**Ex. H**), that it considered the "issue closed unless I receive additional information from you in a timely manner."

Caterpillar states in its Complaint that it reasonably understood the '211 patent "to be among the applications generally referred to in Entec's letter of October 29, 2003, as applications covering technology used by Caterpillar." Comp., ¶ 34. This allegation shows that Caterpillar is relying[2] upon a communication over two years old to surmise, without verification, that Entec may consider that patent to contain claims covering Caterpillar's technology. This thread is simply too thin to swing the sword of litigation in federal court. Entec's covenant not to sue belies Caterpillar's tenuous surmise.

***The Licensing Discussions in Late 2005***

In the late fall of 2005, after the issuance of the '211 patent to Entec, Caterpillar's patent counsel, Chico Gholz, contacted one of Entec's counsel before the PTO, Ian Calvert, to initiate further licensing discussions. By the time Caterpillar and Entec met in December 2005 to discuss

---

[2]   Caterpillar is seeking to rely upon this Entec communication of October 29, 2003, as the basis for filing its Complaint for Declaratory Judgment, despite the fact that it dismissed that communication and considered the "issue closed" in its responsive communication of January 27, 2004. **Ex. H**.

the licensing of Entec's technology, Entec was wary of the discussions possibly being misconstrued.

Therefore, Entec insisted and Caterpillar agreed in writing that neither the meetings nor any

communications surrounding the meetings would be used as a basis for the commencement of

litigation. *See* **Exs. M, N, O, P,** and **Q.**[3]  Contrary to the agreement of the parties, Caterpillar

characterizes these discussions as settlement discussions focused on allegations of infringement of

Entec's '550 and '211 patents and trade secret misappropriation, implies falsely that Entec broke

them off, and uses as one of the foundations of its Complaint the fact that these settlement

negotiations were unsuccessful and were terminated.  Compl. ¶¶ 13, 35.  It is evident from the

Caterpillar letter terminating such discussions that the termination occurred by Caterpillar, not

Entec, the very day (15 minutes after) suit was filed – thus it could hardly be a basis for the filing of

suit.  **Ex. T.**

**III.     ARGUMENT AND CITATION TO AUTHORITY**

      **A.     Caterpillar's Suit Should Be Dismissed for Lack of Subject Matter Jurisdiction.**

            **1.     Burden of Proof to Establish Jurisdiction on Caterpillar.**

      In cases where the jurisdiction of the court is challenged as a factual matter, the party invoking jurisdiction has the burden of supporting the allegations of jurisdictional facts by competent proof.

*Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.  1979), *citing McNutt v. General Motors*

*Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).  *See also WM. Wrigley*

*Jr. Co., v. Cadbury Adams USA LLC*, 2004 WL 2616300, *1 (N.D. Ill.  2004) (applied to patent

case).

---

[3] In his letter of November 23, 2005 (**Ex. P**), to Lou Isaf, Charles Gholz, counsel for Caterpillar, stated:
     Caterpillar agrees that the provisions of Federal Rule of Evidence 408 will govern this meeting.
     Caterpillar also agrees that neither party shall use any communications (whether oral or in writing)
     made during this meeting, or any communications relating to the meeting, to initiate any legal
     proceedings or as evidence in any legal proceeding, other than to prove and enforce agreements that
     might be reached during the meeting.
The parties confirmed this agreement during each of the two meetings that were held.

[T]he Declaratory Judgment Act is procedural only, and does not alter the
jurisdictional limits on the federal courts, and defendant's motion to dismiss for want
of case or controversy is of "constitutional dimension," "strik[ing] at the core of the
district court's jurisdiction under Article III of the United States Constitution.
Consequntly, despite the liberal construction of the Act in patent cases, the
declaratory judgment plaintiff still "carries the burden of proving 'the existence of
facts underlying' his allegation of the existence of an actual controversy."  Contrary
to a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), where
the complaint's allegations are taken as true, when the court's subject matter
jurisdiction is attacked," 'the trial court is free to weigh the evidence and satisfy itself
as to the existence of its power to hear the case.

> [N]o presumptive truthfulness attaches to plaintiff's allegations, and
> the existence of disputed material facts will not preclude the trial
> court from evaluating for itself the merits of the jurisdictional claims.
> <u>Moreover, the plaintiff will have the burden of proof that jurisdiction
> does in fact exist.</u>

*BASF Corp. v. PPG Ind., Inc.,* 1991 WL 354884, *6-7 (D.N.J.) (citations omitted) (emphasis

added).


## 2.        Standard for Jurisdiction in a Declaratory Judgment Case.

The Declaratory Judgment Act provides, in pertinent part:

> *In a case of actual controversy* within its jurisdiction, . . . any court of the United
> States, upon the filing of an appropriate pleading, may[4] declare the rights and other
> legal relations of any interested party seeking such declaration, whether or not further
> relief is or could be sought.

28 *U.S.C.* § 2201(a) (emphasis added).  Thus, "[t]he existence of an actual controversy is an

absolute predicate for declaratory judgment jurisdiction." *Black & Decker, Inc. v. Robert Bosch*

*Tool Corp.*, 371 F.Supp. 965, 968 (N.D. Ill. 2005); *see also Aetna Life Ins. Co. v. Haworth*, 300

U.S. 227, 239-40, 57 S. Ct. 461, 463-64, 81 L.Ed. 617 (1937)(the Declaratory Judgment Act

requires the existence of an actual case or controversy between the parties before a federal court can

---

[4]  "The Act itself does not require a district court to declare the rights and legal relations of the parties.  Rather it
explicitly notes that we may take such action.  The Act therefore is an 'authorization for jurisdiction, not a command.'"
*United Sweetener USA, Inc. v. The Nutrasweet Co.*, 766 F.Supp. 212, 216 (D. Dela. 1991) (internal citation omitted),
*quoting Erbamont, Inc. v. Cetus Corp.*, 720 F.Supp. 387, 392 (D.Del. 1990).  *United Sweetener* went on to state: "Under
the Act, the Court should refuse to proceed if it finds that a declaratory judgment action will not serve a useful purpose
or is otherwise undesirable."

constitutionally assume jurisdiction).  When there is no actual controversy between the parties, a

declaratory judgment action should be dismissed under Rule 12(b)(1) of the *Federal Rules of Civil*

*Procedure* for lack of subject matter jurisdiction.  *See Waters Corp. v. Hewlett-Packard Co.*, 999 F.

Supp. 167, 171-73 (D.Mass. 1998)(dismissing declaratory judgment action for non-infringement

and invalidity of patents for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)).

In cases involving a declaratory judgment of patent non-infringement or invalidity, the

Federal Circuit has articulated a two-part test to determine whether an actual controversy exists

between the parties:

> As applied to declarations of patent rights and relationships, for an actual controversy
> more is required than the existence of an adversely held patent.  Thus in patent
> litigation there has evolved a pragmatic two-part test for determining declaratory
> justiciability.  There must be both (1) <u>an explicit threat or other action</u> by the
> patentee, which creates <u>a reasonable apprehension</u> on the part of the declaratory
> plaintiff that it will face an infringement suit, and (2) present activity which could
> constitute infringement or concrete steps taken with the intent to conduct such
> activity.

*BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993) (emphasis added).  The

first prong of the test examines the patentee's conduct, while the second prong addresses the

conduct of the declaratory judgment plaintiff.  *See Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,

846 F.2d 731, 736 (Fed. Cir. 1988).

The test for determining whether a declaratory plaintiff has a "reasonable apprehension" of

being sued under a particular patent is an objective one.  *See BP Chems. Ltd. v. Union Carbide*

*Corp.*, 4 F.3d at 978 ("[I]t is the objective words and actions of the patentee that are controlling

[and] a subjective apprehension is insufficient without objective substance.").  Thus, "[t]he

'reasonable apprehension of suit' test requires more than the nervous state of mind of a possible

infringer; it requires that the objective circumstances support such an apprehension." *Phillips*

*Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053-54 (Fed. Cir. 1995).  "A

purely subjective apprehension of an infringement suit is insufficient to satisfy the actual controversy requirement." *Indium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985), *cert. denied*, 479 U.S. 820 (1986). Caterpillar's subjective surmise of the scope of the '211 patent granted in 2005 and of Entec's intent to sue on that patent based on an Entec communication two years earlier in 2003 (which on its face sought to "continue good faith discussions and to offer again a license") does not meet the objective requirements of this test. See Compl. ¶ 34; **Ex. G**, page 2. Similarly, the termination (by Caterpillar itself) of licensing discussions held by the parties in December 2005, which the parties expressly agreed could in no way be used as the basis for a suit, cannot meet this test.

The party seeking a declaratory judgment "has the burden of establishing by preponderance of the evidence . . . that it has a reasonable apprehension that it will be sued." *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992). To meet this burden, the declaratory plaintiff must establish "the existence of facts underlying" its allegations of an actual controversy in the complaint. *See Int'l Medical Prosthetics Research Associates, Inc., v. Gore Enterprise Holdings, Inc.*, 787 F.2d 572, 576 (Fed. Cir. 1986)(*quoting Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388 (Fed. Cir. 1984)). The Court may properly examine only the facts existing at the time the complaint is filed to determine whether a justiciable controversy is present.[5] *See Waters Corp.*, 999 F. Supp. at 169 n.1 (noting that, under Federal Circuit precedent, affidavits and documentary evidence may be considered in ruling on 12(b)(1) motion to dismiss in a declaratory judgment patent case).

---

[5] However, the plaintiff in a declaratory judgment action is required to show that the justiciable controversy that existed at the time suit was filed continues throughout the litigation. Section III., A., 3. beginning on page 13 of this brief.

3.    **Neither Entec's Actions nor Bryant's Actions Created a Reasonable Apprehension of Suit.**

Caterpillar's inclusion of Bryant as a defendant is based on his attendance at meetings in January 2000 and in December 2005, (Compl. ¶¶ 10, 13, 18, and 35), his filing (as inventor) along with Entec "a preliminary amendment in the USPTO in their patent no. 10/955,812,"[6] (Compl. ¶ 30), and, apparently, some news publications (Compl. ¶ 33).[7] These allegations, whether taken separately or together do not meet the standard required to file and maintain a declaratory judgment action.

The allegations against Entec rely upon alleged assertions in October 2003 (**Ex. G**) regarding a not yet issued patent – the '211 patent, which issued on October 4, 2005. Compl. ¶ 34. In *Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.*, 70 F.Supp.2d 944, 958 (N.D. Iowa 1999), *aff'd in part and rev'd in part,* 272 F.3d 1365 (Fed. Cir. 2001), the court held that threats made prior to the issuance of a patent, which were not repeated after the patent issued, could not be used as a basis for a declaratory judgment action. When viewed in its entirety the Entec letter of October 2003 is not a threat of litigation – it expressly seeks to enter good faith negotiations to license Entec technology. Nevertheless, under *Dethmers,* this 2003 letter cannot serve as the basis for initiating a declaratory judgment action relating to a patent issued in 2005 - long after the letter was sent.

Caterpillar's failure to include copies of the correspondence exchanged with Entec as exhibits to its Complaint does not insulate it from the totality of circumstances revealed by those communications. *See Waters Corp.*, 999 F.Supp. at 171; *Shell Oil Co.*, 970 F.2d at 888. Although

---

[6]   Caterpillar makes no allegation that the preliminary amendment filed by Entec accuses Caterpillar of infringement of any issued or to-be-issued patent.

[7]   Defendants use the word "apparently," because Caterpillar concedes in its Complaint that two out of the three quotes it includes were either inaccurate or erroneous. Also, from the information provided in the complaint, it appears that the third one was a conclusion of Cox News Service reached (and published) in March 2005 based on their interpretation of information acquired the year before and referring to a patent obtained by Bryant in 2001.

Entec presented Caterpillar with facts it learned with regard to Caterpillar's technology and actions, Entec consistently noted that it was relying on Caterpillar's good faith, including Caterpillar's assurances that it did not use Entec technology, and persistently sought to initiate discussions over licensing Entec's technology.[8]  The communications on which Caterpillar relies do not singularly or in concert support a conclusion that Entec was threatening Caterpillar with suit.  *See BP Chems, Ltd.*, 4 F.3d at 978.  However strong the promotions of Entec's technology and the recitations of the strength of Entec's intellectual property, there were no direct or implied threats of litigation whatsoever.

### 4.    Caterpillar Is Estopped from Using Licensing Discussions in December 2005 or Its Post-Suit Unilateral Termination of Those Discussions as Grounds for its Complaint for Declaratory Judgment.

The parties specifically agreed that the licensing discussions that occurred at the end of 2005 would not be the basis for any litigation between them.  *See* **Exs. P** and **Q**.  The agreement covered any communications relating to those meetings.  The parties met twice in December and agreed to hold dates open in January for a further meeting.  The mere offering of a license "does not create an actual controversy."  *Phillips Plastics Corp. v. Kato Hataujou Kabushiki Kaisha*, 57 F.3d 1051, 1053 (Fed. Cir. 1995).  Although a breakdown of such negotiations can sometimes serve as grounds for a declaratory judgment (*Id.*), such reasoning does not apply where the parties have expressly pledged otherwise.

Of crucial significant to the total circumstances of this case is that Caterpillar initiated the negotiations and then filed suit before it unilaterally broke the off.  "Although subsequent events may divest a court of jurisdiction, they may not create jurisdiction if none existed at the time of filing."  *Spectronics Corp. v. H.B. Fuller Co.,* 940 F.2d at 631, 635-36 (Fed Cir.), *cert. denied*, 502

---

[8]  "Defendants' letters, which are simply suggestions that the parties engage in licensing negotiations, are insufficient on their own to create an actual controversy.  *Livorsi Marine, Inc. v. Nordskog Publishing, Inc.*, 268 F.Supp.2d 994, 999 (N.D. Ill. 2003).

U.S. 1013 (1991).  *See also Livorsi Marine, Inc. v. Nordskog Publishing, Inc.*, 268 F.Supp.2d 994,

998 (N.D. Ill. 2003) ("When parties are still engaged in licensing negotiations as of the filing date of

an action for declaratory judgment, there can be no actual controversy.").  In this case, Entec was

looking forward to another meeting in January, when Caterpillar filed suit (10:42:07 a.m.) and 15

minutes later (11:48 a.m. – **Ex. T**) sent a letter by facsimile to Entec notifying Entec of the

termination of discussions and of Caterpillar's intent to file suit.

> **5.  Caterpillar Cannot Satisfy Its Burden To Show that Jurisdiction Continues to Exist.**

> "The existence of a sufficiently concrete dispute between the parties remains, however, a jurisdictional predicate to the vitality of such an action."  "Indeed, 'an actual controversy must be extant at all stages of review, not merely at the time the [counterclaim] is filed.'"  The burden is on the declaratory judgment plaintiff to establish that jurisdiction over the declaratory judgment counterclaim existed at the time of filing and continues to exist at later stages of the litigation.

*SL Waber, Inc. v. American Power Conversion Corp.*, 135 F.Supp.2d 521, 524 (D.N.J.

1999)(citations omitted).  *See also Vesture Corp. v. Thermal Solutions, Inc.*, 284 F.Supp.2d 290,

295 (M.D.N.C. 2003), *citing Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272

(1975) (court must establish actual controversy on "totality of the circumstances").

**Ex. A** to the Motion, the Covenant Not to Sue of Entec and of Bryant, conclusively

establishes that Caterpillar does not have ongoing jurisdiction. In *GAF Corp. v. E.I. DuPont de*

*Nemours & Co.*, 1988 WL 73919, at *2 (D.N.J. 1988), the district court held that Du Pont's promise

not to assert the *original* '985 patent was sufficient to divest the Court of jurisdiction even though

Du Pont was unwilling to give a release as to the reissuance of the '985 patent.  GAF failed to show

that it had sustained or was immediately in danger of sustaining some direct injury and its fears

relating to a potential reissue of the patent, even though it was possible the claims could be the

same, was "conjectural."  *Id.*  In *Samsung Electronics Co., Ltd. v. Rambus, Inc.*, 398 F.Supp.2d 470,

476 (E.D.Va. 2005) (internal citations omitted), the Court held: "When a patent holder covenants not to sue an alleged infringer in this manner, the patent holder is 'forever estopped' from asserting the liability of the alleged infringer. Even where a covenant not to assert infringement of certain patents does not include future products, 'an actual controversy cannot be based on a fear of litigation over future products." The Court reached this conclusion despite the fact that the covenant did not apply to other patents held by Rambus, related or unrelated. *Id.* at 474. The Covenant Not to Sue of Entec and Bryant covers potential infringement of existing products by the '550 and '211 patents, but expressly excludes any other patents, whether related or not, that might be granted to Entec or to Bryant in the future. That is enough.

**B.      Caterpillar's Suit Should Also Be Dismissed Because It Constitutes an Improper Anticipatory Filing.**

The Declaratory Judgment Act, 28 U.S.C. § 2201, gives district courts a "unique breadth of . . . discretion to decline to enter a declaratory judgment" even if jurisdiction exists. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 St.Ct. 2137, 132 L.Ed.2d 214 (1995); *see also El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 498 n.11 (1st Cir. 1992) ("a federal court . . . must independently satisfy itself about the suitability of granting declaratory relief under the Declaratory Judgment Act."). Thus, "even if a case satisfies the actual controversy requirement, there is no absolute right to a declaratory judgment, for the statute specifically entrusts courts with discretion to hear declaratory suits or not depending on the circumstances." *Serco Services Co., L.P. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995). Pursuant to this authority, this Court should dismiss Caterpillar's declaratory judgment complaint as an improper anticipatory filing even if the Court finds that Caterpillar otherwise had an objectively reasonable basis upon which to file suit. *See, e.g., EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813-815 (Fed. Cir. 1996)(although actual controversy was found to exist, district court properly exercised its discretion to dismiss accused patent infringer's

declaratory judgment action because complaint was viewed as a tactical measure to improve EMC's posture in the ensuing negotiations, not a purpose that the Declaratory Judgment Act was designed to serve).

Many courts have exercised their broad discretion to dismiss anticipatory declaratory judgment actions even where they have met the actual controversy requirement. *See, e.g., Perez v. Ledesma*, 401 U.S. 82, 119 n.12, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971)("The federal declaratory judgment action is not a prize to the winner of a race to the courthouses . . . ."); *EMC*, 89 F.3d at 815 (patent infringement action*); Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 749-50 (7th Cir. 1987) (trademark infringement action); *Collezione Europa U.S.A., Inc. v. Schnadig Corp.*, 2001 WL 823563, *2 (M.D.N.C. 2001) (patent infringement action); *Eli's Chicago Finest, Inc. v. The Cheesecake Factory, Inc.*, 23 F.Supp.2d 906, 909 (N.D. Ill. 1998) (trademark infringement action); *Hunt Mfg. Co. v. Fiskars Oy AB*, 1997 WL 667117, *3 (E.D.Pa. 1997) (patent infringement action).  As stated in *Eli's*, courts generally recognize two sound policy reasons for exercising such discretion:

> First, allowing a potential defendant to make a procedural preemptive strike robs the natural plaintiff of his ability to select his forum.  *Allendale Mutual Insurance Co. v. Bull Data Systems, Inc.*, 10 F.3d 425, 431 (7th Cir. 1993); *Publications International Ltd. v. McRae*, 953 F.Supp. 223 (N.D. Ill. 1996).  Second, prohibiting a 'race to the courthouse,' encourages settlement and discourages costly duplicate litigation.  *See Leaf, Inc. v. Clay White Assoc., Inc.*, 1996 WL 580876 (N.D. Ill.).

*Eli's*, 23 F.Supp.2d at 909.

Caterpillar's actions here constitute far more egregious anticipatory forum shopping than was involved in any of the other cases cited above.  First, as detailed above, Caterpillar never had an objectively reasonable basis upon which to file its declaratory judgment action.  Thus, not only did Caterpillar file an improper anticipatory declaratory judgment action, but in its rush to do so, Caterpillar failed to even adhere to the jurisdictional prerequisites necessary to support such a filing.

*See Bausch & Lomb, Inc. v. CIBA Corp.*, 39 F.Supp.2d 271, 275 (W.D.N.Y. 1999) ("given the lack of evidence . . . that [defendant] was likely to bring an infringement action against it, allowing the action to go forward would encourage forum shopping and the filing of premature, purely anticipatory declaratory judgment complaints."). Furthermore, Caterpillar has expressly relied upon the termination of licensing discussions[9] (**Ex. T**) as a basis for suit after explicitly agreeing that such discussions and the related communications would not be used as the basis of any suit. **Ex. P**. Finally, Caterpillar cites stale communications in part without revealing to the court the totality of circumstances of such communications, including express disclaimers in the communications from Entec and persistent efforts on the part of Entec to kindle a good faith interest in licensing rather than an aggressive effort to institute hostilities. Caterpillar's conduct should not be rewarded by allowing it to pick the date, the forum, and the subject matter of litigation with Entec when no evidence of objective threats of litigation exists.

## IV.    CONCLUSION

The precipitous and improper nature of the Caterpillar filing is personified by Caterpillar's termination of licensing negotiations fifteen minutes after it had already filed its Complaint for Declaratory Judgment. Even though Caterpillar did not terminate the licensing negotiations until after it filed suit, it claimed that termination as a basis for bringing suit. This tactic backfires as there was no controversy or fear of litigation by Caterpillar until it broke off the discussions, *after* suit was filed. No justiciable controversy existed when suit was filed. Furthermore, the documents between the parties unequivocally evidence the commitment of both Caterpillar and Entec not to use these discussions as the basis of a suit. Caterpillar's cavalier proclamation of its own post-suit

---

[9] Caterpillar failed to inform the Court that it was the party terminating discussions or that the termination occurred after suit was filed. At the second December licensing negotiation meeting, Caterpillar and Entec had agreed to hold January 12 and 13, 2006, for further discussions.

termination of licensing discussions as a basis for its reasonably apprehending a suit echoes its

mischaracterization of the communications between the parties of years before.

Caterpillar has manipulated the facts to create the impression of a controversy, where none

exists, in order to file an anticipatory suit in a favorable location without reservation or apology.

Examination of the totality of circumstances leaves Caterpillar without standing.  If Caterpillar does

not voluntarily dismiss its suit before a ruling is required, the ruling should not countenance such

conduct or leave any doubt as to the Court's position.

Because of the relative size and financial position of Entec as compared to Caterpillar, Entec

and Bryant have submitted a Covenant Not to Sue to remove any doubt whatsoever as to intentions

with regard to the matters that Caterpillar has wrongfully alleged to be in controversy.  Although

Entec does not believe execution of such a document was necessary, the covenant is provided

nonetheless as Entec can ill afford to litigate with such a well-heeled opponent on matters for which

there is no actual controversy.  Entec asks the Court not to state the covenant not to sue as its only

ground for the dismissal Order.  Otherwise, Entec may face a new complaint for declaratory

judgment from Caterpillar each time Entec is issued a new patent.

Respectfully submitted,

_____
Fred E. Schulz
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive - Suite 2800
Chicago, Illinois  60606-1229
312/201-2000
312/201-2555 (Fax)
schulz@wildmanharrold.com

Of Counsel:
Kirk W. Watkins
WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
1201 West Peachtree Street - Suite 3500
Atlanta, Georgia  30309
(404)  888-7414
(404)  872-4836 (Fax)
kwatkins@wcsr.com  email

19

## CERTIFICATE OF SERVICE

I, the undersigned, a non-attorney, certify that I served a true and correct copy of the foregoing Defendants' Memorandum in Support of Motion to Dismiss upon all counsel of record by enclosing said copy in an envelope, with proper postage affixed, and depositing said envelope in the U.S. Mail at 225 West Wacker Drive, Chicago, Illinois 60606-1229 before 5:00 p.m. on January 23, 2006.

_____

[x]     Under penalties as provided by law pursuant to
        735 ILCS 5/1-109, I certify that the statements
        set forth herein are true and correct.

CATERPILLAR v. ENTEC

1:05-cv-01394-MMM-JAG - (USDC/CDIL-PEORIA)

SERVICE LIST

| | |
|---|---|
| Robert G. Abrams, Esq.<br>HOWREY SIMON ARNOLD & WHITE LLP<br>1299 Pennsylvania Avenue NW<br>Washington, DC  200004-2402<br>202/383-0800<br>202/383-6610 (Fax)<br>abramsr@howrey.com<br><br>Martha K. Gooding, Esq.<br>Michael J. Stimson, Esq.<br>William C. Rooklidge, Esq.<br>HOWREY LLP<br>2020 Main Street<br>Irvine, CA  92614-8200<br>949/721-6900<br>949/721-6910 (Fax)<br><br>Robert M. Bennett, Esq.<br>Timothy L. Bertschy, Esq.<br>HEYL, ROYSTER VOELKER & ALLEN<br>124 SW Adams Street - Suite 600<br>Peoria, IL  61602<br>309/676-0400<br>309/676-3374 (Fax)<br>rbennett@hrva.com<br>tbertschy@hrva.com | Attorneys for Plaintiff |